```
1  SAGASER, JONES & HELSLEY
   2445 Capitol Street, 2nd Floor
2  Post Office Box 1632
   Fresno, California 93717-1632
3  Telephone: (559) 233-4800
   Facsimile: (559) 233-9330
4  E-Mail: ptoole@sjhattorneys.com

5  Howard A. Sagaser #072492
   Patrick D. Toole #190118
6
   Attorneys for:  Plaintiffs U.S.A. Express Cab, LLC, a California organization; Alpha
7                  Transportation, Inc. dba Alpha Cab Company, a California organization, Dial
                   Dialing, Inc. dba California Cab, a California organization, City Cab Company,
8                  a California organization, Milpitas Cab, LLC, a California organization,
                   National Cab, LLC, a California organization, and Net Cab Company, a
9                  California organization
```

FILED
2007 DEC -5 P 2: 54
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

ADR
E-FILING
Fee Paid
BY FAX

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

U.S.A. EXPRESS CAB, LLC, a California organization; ALPHA TRANSPORTATION, INC. dba ALPHA CAB COMPANY, a California organization; DIAL DIALING, INC. dba CALIFORNIA CAB, a California organization; CITY CAB COMPANY, a California organization; MILPITAS CAB, LLC, a California organization; NATIONAL CAB, LLC, a California organization; and NET CAB COMPANY, a California organization,

   Plaintiffs,

vs.

CITY OF SAN JOSE; SAN JOSE CITY COUNCIL; and DOES 1 through 10, inclusive,

   Defendants.

Case No. C07 06171 HRL

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; AND DEMAND FOR JURY TRIAL

Pursuant to Rule 3 of the Federal Rules of Civil Procedure, Plaintiffs, U.S.A. Express Cab, LLC, Alpha Transportation, Inc. dba Alpha Cab Company, Dial Dialing, Inc. dba California Cab, City Cab Company, Milpitas Cab, LLC, National Cab, LLC, and Net Cab Company, file this Complaint for Declaratory and Injunctive Relief and Demand for Jury Trial

///

{6823/002/00217703.DOC}   1

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; AND DEMAND FOR JURY TRIAL

against Defendants, City of San Jose ("City"), San Jose City Council ("Council"), and Does 1 through 10, alleging as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Sections 1331 and 1343 for resolution of rights arising under the federal constitution and federal laws.

2. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Section 1332.

3. This Court has personal jurisdiction over the City, a municipal corporation, and the Council, its governing body, who are residents of this State.

4. Venue is proper in this District Court pursuant to 28 U.S.C. Section 1391 and Local Rule 3-2(e) in that the City, the Council, and Does 1 through 10, are subject to personal jurisdiction in this District at the time the action is commenced, and all of the actions and conduct of Defendants alleged herein occurred within this District.

## PARTIES

5. Plaintiff U.S.A. Express Cab, LLC ("U.S.A. Express") is a taxicab business organization. U.S.A. Express' primary business activity consists of transportation services in San Jose, California. U.S.A. Express is a minority-owned and operated business.

6. Plaintiff Alpha Transportation, Inc. dba Alpha Cab Company ("Alpha") is a taxicab business organization. Alpha's primary business activity consists of transportation services in San Jose, California. Alpha is a minority-owned and operated business.

7. Plaintiff Dial Dialing, Inc. dba California Cab ("California") is a taxicab business organization. California's primary business activity consists of transportation services in San Jose, California. California is a minority-owned and operated business.

8. Plaintiff City Cab Company ("City Cab") is a taxicab business organization. City Cab's primary business activity consists of transportation services in San Jose, California. City Cab is a minority-owned and operated business.

///

9. Plaintiff Milpitas Cab, LLC ("Milpitas") is a taxicab business organization. Milpitas' primary business activity consists of transportation services in San Jose, California. Milpitas is a minority-owned and operated business.

10. Plaintiff National Cab, LLC ("National") is a taxicab business organization. National's primary business activity consists of transportation services in San Jose, California. National is a minority-owned and operated business.

11. Plaintiff Net Cab Company ("Net") is a taxicab business organization. Net's primary business activity consists of transportation services in San Jose, California. Net is a minority-owned and operated business.

12. Plaintiffs are informed and believe and thereon allege that the City is a municipal corporation under and existing by virtue of the laws of the State of California.

13. Plaintiffs are informed and believe and thereon allege that the Council is the governing body of the City.

## NATURE OF ACTION

14. This action seeks declaratory relief to determine the constitutionality of the City's planned reallocation of taxicab airport service permits according to the Taxicab Service Model ("Model") effective January 1, 2008. Specifically, Plaintiffs seek to temporarily and permanently enjoin enforcement of the Model by the City as approved by the Council on November 20, 2007.

15. Enforcement of the proposed reallocation will deny Plaintiffs Equal Protection of the Law and Substantive Due Process rights, both of which are guaranteed by the Constitution of the United States. Plaintiffs have no adequate remedy at law. Further, Plaintiffs are suffering, and will continue to suffer irreparable injury unless the permit reallocation is declared unconstitutional and the City is enjoined from enforcing the reallocation plan as approved by the Council on November 20, 2007.

///
///
///

## STANDING

16. Plaintiffs have suffered injury in fact in that they are being denied taxicab airport service permits in a discriminatory manner and in such a way that is arbitrary and capricious. Due to the reallocation, Plaintiffs' airport service permits are being reduced or taken away. As a result, Plaintiffs are being denied the opportunity to serve the airport and will ultimately lose their businesses.

17. Plaintiffs' injuries are directly traceable to Defendant's actions. The Council, on behalf of the City, voted to reallocate airport service permits on November 20, 2007. The permit reallocation will prevent Plaintiffs from servicing the airport effective January 1, 2008. But for the permit reallocation, Plaintiffs would not suffer discrimination on the basis of race.

18. Plaintiffs' injuries will be redressed by a favorable decision in this matter. Specifically, through this action, Plaintiffs seek to invalidate portions of the proposed taxicab airport service reallocation. If some or all of the permit reallocation is invalidated, Plaintiffs will be able to continue providing taxicab services to the airport. Plaintiffs remain ready, willing and able to provide taxicab services to the airport.

## BACKGROUND FACTS

19. Plaintiffs U.S.A. Express, Alpha, California, City Cab, Milpitas, National, and Net (collectively "Plaintiffs" or "Cab Companies") are all minority-owned businesses. The Cab Companies provide taxicab service to the Mineta San Jose airport ("Airport") and community of San Jose.

20. City Ordinance 6.64.140 requires all taxicab companies to register and operate at least five (5) automobiles to qualify as a taxi service. All Cab Companies are registered with the City and in good standing.

21. The Airport is owned and operated by the City. City Ordinance 6.64.440(A) requires a permit to operate taxicab services at the Airport. In turn, City Ordinance 6.64.440(B) gives authority to the Director of Aviation to issue taxicab Airport service permits based on criteria adopted by the Council.

22. Prior to 2005, Yellow Cab and United Cab held an exclusive ten (10)-year concession agreement to provide the Airport with taxicab services. Under these concessions, <u>only</u> these companies were allowed to pick up taxi passengers at the Airport. As a result of the exclusive concession, several taxicab companies, including Delta Cab and American Cab, were forced out of business.

23. Between 1994 and 2004, there was a significant decline in taxicab service quantity and quality. A report commissioned by the City determined that in fiscal year 2002-2003, there was a thirty percent (30%) drop in Airport taxicab service. During the same time period, passenger complaints rose to historic levels.

24. The City has recognized the importance of Airport service to the taxicab companies. To improve service at the Airport and provide a financial incentive to service downtown areas, the City opened Airport service to all taxicab companies. In exchange for the permits, the registered companies were required to serve the San Jose community at large on alternate days.

25. In 2005, the City implemented the Model to address the lack of service. The stated goals of the Model were to:

1. Enhance Access to the Airport and Improve Service to the City;

2. Improve Service to the Customer;

3. Balance the Equity and Control within the Taxicab Industry (between driver and owners); and

4. Maintain an Effective and Efficient City Regulatory and Oversight System.

26. To meet these goals, the City opened Airport service to all registered cab companies and independent drivers without regard to fleet size. In 2005, the City issued 300 Airport service permits. The City distributed 195 permits directly to independent drivers. These individual drivers, theoretically, were free to affiliate with whichever taxicab company the driver wished, if any.

27. The remaining 105 Airport permits were distributed to taxicab companies. Each registered company, including Plaintiff Cab Companies, received a minimum of seven (7) permits. Larger taxicab companies received a greater distribution of permits under the 2005 allocation.

28. Plaintiffs are informed and believe and thereon allege that Yellow Cab Company ("Yellow") was issued or acquired eighteen (18) taxicab Airport service permits in 2005.

29. Plaintiffs are informed and believe and thereon allege that SV Checker Cab Company ("Checker") was issued or acquired eight (8) taxicab Airport service permits in 2005.

30. Plaintiffs are informed and believe and thereon allege that Yellow and Checker (collectively "Yellow/Checker") are owned and operated by the same non-minority person. Combined, Yellow/Checker was allocated a total of twenty-six (26) Airport service permits. This amount is approximately twenty-five percent (25%) of the Airport service permits issued to all taxi companies in 2005.

31. Collectively, the seven Cab Companies were issued fifty-seven (57) Airport service permits in 2005. This amounts to approximately fifty-four percent (54%) of the taxicab permits issued to taxi companies in 2005.

32. Plaintiffs are informed and believe that two other taxicab companies, Rainbow and United, were each allocated eleven (11) permits. Collectively, these two companies were allocated approximately twenty-one percent (21%) of the Airport permits.

33. To further effectuate the City's goals, the Model imposed obligations on all Airport permitees. Specifically, the permit only authorized the permitee to pick up Airport passengers every other day. On the days the permitee was working "off Airport," the permittee was required to complete four (4) trips. If the permittee failed to meet the four (4) "off Airport" trip requirement, the permittee was subjected to fines and revocation of the permit.

34. The Model provided a two-year period for the new permittees to service the Airport and community of San Jose beginning in 2005. After two years, the City planned

to reallocate Airport service permits based on the permittee's share of "off Airport" trips. These "off Airport" trips were to be reported directly to the City. It was unclear, however, how these "off Airport" trips were to be verified or what constituted an "off Airport" trip. The Council determined in 2005 that "off Airport" trip numbers from the first year of the study (2005-2006) would not count towards the 2008 allocation. Only total trip numbers from the second year of the study (August 2006 to July 2007) would be used to calculate the number of "off Airport" trips.

35. During the time period between 2005 and 2007, the Plaintiff Cab Companies each experienced large growth attributable to the fact that each company was allowed to service the Airport. In particular:

a. In 2005, prior to the initial permit allocation U.S.A. Express operated a fleet of five (5) taxicabs. During the two years between 2005 and 2007, U.S.A Express grew to operate a fleet of twenty (20) taxicabs with a total of eight (8) permits.

b. In 2005, prior to the initial permit allocation, Alpha owned and operated a fleet of between four (4) and six (6) taxicabs. During the two years between 2005 and 2007 Alpha has grown to fifteen (15) taxicabs with a total of eight (8) permits.

c. In 2005, prior to the initial permit allocation, California owned and operated a fleet of eight (8) taxicabs. In the two years between 2005 and 2007 California has grown to fifteen (15) taxicabs with a total of eight (8) permits.

d. In 2005, prior to the initial permit allocation, City Cab owned and operated a fleet of seven (7) taxicabs. During the two years between 2005 and 2007, City Cab grew to twenty-one (21) taxicabs with a total of eight (8) permits.

e. In 2005, prior to the initial permit allocation, Milpitas owned and operated a fleet of seven (7) or eight (8) taxicabs. During the two years between 2005 and 2007 Milpitas grew to operate a fleet of eighteen (18) taxicabs with a total of nine (9) permits.

f. In 2005, prior to the initial permit allocation, Net operated a fleet of seven (7) taxicabs. During the two years between 2005 and 2007, Net grew to operate a fleet of seventeen (17) taxicabs with a total of eight (8) permits.

{6823/002/00217703.DOC}                               7

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; AND DEMAND FOR JURY TRIAL

to reallocate Airport service permits based on the permittee's share of "off Airport" trips. These "off Airport" trips were to be reported directly to the City. It was unclear, however, how these "off Airport" trips were to be verified or what constituted an "off Airport" trip. The Council determined in 2005 that "off Airport" trip numbers from the first year of the study (2005-2006) would not count towards the 2008 allocation. Only total trip numbers from the second year of the study (August 2006 to July 2007) would be used to calculate the number of "off Airport" trips.

35. During the time period between 2005 and 2007, the Plaintiff Cab Companies each experienced large growth attributable to the fact that each company was allowed to service the Airport. In particular:

a. In 2005, prior to the initial permit allocation U.S.A. Express operated a fleet of five (5) taxicabs. During the two years between 2005 and 2007, U.S.A Express grew to operate a fleet of twenty (20) taxicabs with a total of eight (8) permits.

b. In 2005, prior to the initial permit allocation, Alpha owned and operated a fleet of between four (4) and six (6) taxicabs. During the two years between 2005 and 2007 Alpha has grown to fifteen (15) taxicabs with a total of eight (8) permits.

c. In 2005, prior to the initial permit allocation, California owned and operated a fleet of eight (8) taxicabs. In the two years between 2005 and 2007 California has grown to fifteen (15) taxicabs with a total of eight (8) permits.

d. In 2005, prior to the initial permit allocation, City Cab owned and operated a fleet of seven (7) taxicabs. During the two years between 2005 and 2007, City Cab grew to twenty-one (21) taxicabs with a total of eight (8) permits.

e. In 2005, prior to the initial permit allocation, Milpitas owned and operated a fleet of seven (7) or eight (8) taxicabs. During the two years between 2005 and 2007 Milpitas grew to operate a fleet of eighteen (18) taxicabs with a total of nine (9) permits.

f. In 2005, prior to the initial permit allocation, Net operated a fleet of seven (7) taxicabs. During the two years between 2005 and 2007, Net grew to operate a fleet of seventeen (17) taxicabs with a total of eight (8) permits.

g.  In 2005, prior to the initial permit allocation, National owned and operated a fleet of seven (7) taxicabs. During the two years between 2005 and 2007, National grew to operate a fleet of fifteen (15) taxicabs with a total of (8) permits.

36.  There was and continues to be severe confusion about which "off Airport" trips were to be reported for future permit allocations. Initially, only the "off Airport" trips for taxicabs with Airport service permits were to be counted toward the 2008 permit reallocation. At some unknown point, the City modified the reporting requirements. Specifically, and for the purposes of the 2008 reallocation, "off Airport" trips were measured by all cab trips (Airport permitted or not) of that individual company. At another unknown date, the City further required that the "off Airport" trips "originate" within the city limits of San Jose. None of these new requirements were communicated to the Cab Companies.

37.  During the 2007 reporting period, the seven Cab Companies only reported "off Airport" trips for taxicabs with Airport service permits. Other cab companies reported all "off Airport" taxicab trips for non-permitted cabs, cabs not registered in San Jose and for trips outside San Jose city limits.

38.  In August 2007, the following trip totals for the year of July 1, 2006, through June 30, 2007, were submitted to the City:

| Company | Trips |
|---|---|
| Alpha | 29,164 |
| American | 0 |
| California | 22,111 |
| City Cab | 16,074 |
| Executive | 14,081 |
| Golden Star | 41,690 |
| Milpitas | 15,994 |
| National | 0 |
| Net | 11,645 |
| Rainbow | 67,241 |
| SV Checker | 111,779 |
| United | 57,285 |
| USA Express | 16,959 |
| Yellow | **337,684** |

39.  Originally, Golden Star had reported 83,379 "off Airport" trips while Net reported 23,289 "off Airport" trips. The City arbitrarily reduced the number of Net and Golden Star reported trips by fifty percent (50%). There is no evidence in the record why a

fifty (50) percent (50%) reduction is reasonable or appropriate. The City did not count trips for American or National because they did not have the requisite number of fifteen (15) cabs to participate in the 2008 reallocation.

40. At some unknown time, Plaintiffs are informed, believe, and thereon allege, that Yellow voluntarily reduced the number of "off Airport" trips it reported by one hundred twenty thousand (120,000). There is no evidence in the record why Yellow did this or why Yellow was not subjected to a fifty percent (50%) reduction such as the reduction of Net and Golden Star. Combined, Yellow/Checker reported 449,463 "off Airport" trips. This amount is 1.5 times the combined total of trips reported by the other ten (10) companies for the same period.

41. Plaintiffs are informed and believe and thereon allege that Yellow/Checker has submitted information for taxicabs that were not registered to provide taxicab services in the City.

42. Plaintiffs are informed and believe and thereon allege that Yellow/Checker submitted information for taxicab trips that did not originate in the City.

43. Plaintiffs are informed and believe and thereon allege that no other companies submitted information for taxicab trips that did not originate in the City.

44. Based on the reporting of "off Airport" trips, City planned to reallocate the Airport permits for 2008 as follows:

| Company | Permits |
|---|---|
| Alpha | 4 |
| American | 0 |
| California | 3 |
| City Cab | 2 |
| Executive | 2 |
| Golden Star | 6 |
| Milpitas | 2 |
| National | 0 |
| Net | 2 |
| Rainbow | 10 |
| SV Checker | 16 |
| United | 8 |
| USA Express | 2 |
| Yellow | 48 |
| **Totals** | **105** |

///

45. Without notice and at some unknown time, City also added new requirements to be eligible to receive Airport permits in 2008. A City Memorandum dated October 4, 2007, states that in order to have Airport service permits reallocated in 2008, taxicab companies now had to:

1. Complete Customer Service Training;
2. Operate a Minimum Fleet of 15 Vehicles and 15 Drivers;
3. Operate a Computer-Aided Dispatch System to Improve Service, Track Customer Calls, and Provide the City with Verifiable Data;
4. Conduct a Minimum 25% of Airport Trips with Alternative Fuel Vehicles to Reduce Environmental Impact; and
5. Be Current on All Fees and Charges Due to the City.

46. On November 20, 2007, the Council modified the Reallocation to guarantee that taxi companies, including Plaintiff Cab Companies, received a minimum of four (4) permits. However, the taxicab companies must otherwise satisfy all new requirements, including operating at least fifteen (15) cabs to receive any Airport permits. As a result, American and National, will receive zero (0) permits because they do not have the minimum number of vehicles or drivers to qualify.

47. Under the proposed reallocation, the other six Cab Companies, will each receive four (4) Airport service permits if each company satisfies the requirements set forth in paragraph 45, above.

48. Collectively, the Cab Companies are projected to receive twenty-four (24) Airport permits, or twenty-three percent (23%) of the total Airport permits allocated.

49. Yellow/Checker will be allocated at least sixty-four (64) permits, or approximately sixty-one percent (61%) of the total Airport permits allocated. Given that multiple Cab Companies will not qualify for permits due to the fifteen (15)-cab requirement, their permits will be reallocated to the qualifying companies (Yellow/Checker). Thus, the actual reallocation will concentrate more permits with Yellow/Checker and less for the other Cab Companies.

///

50. Plaintiffs are informed and believe that the remaining thirteen (13) permits will be allocated to Rainbow and United. These two companies will be allocated approximately twelve percent (12%) of the total Airport permits allocated.

51. Receiving a minimum of four (4) Airport service permits is an insufficient number to maintain a fleet of fifteen (15) taxicabs. If the Cab Companies cannot maintain a fleet of fifteen (15) cabs, then they will receive zero (0) Airport permits.

52. Taxicab drivers and employees of Plaintiff Cab Companies have made it clear that they will quit their employment and seek employment with taxicab companies that are allocated Airport service permits. Plaintiff Cab Companies have already experienced the loss of drivers to other companies because of the proposed permit reallocation. As a result, it is likely that some or all of the seven (7) Cab Companies will not meet the fifteen (15)-cab requirement to qualify for Airport permits in 2008. The actual reallocation is to be announced by the City on December 10, 2007.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

### (Denial of Due Process- United States Constitution)

53. Plaintiffs incorporate the allegations of paragraphs 1 through 52 as though fully set forth herein.

54. Plaintiffs seek a declaration that the City Airport Taxicab Permit Reallocation scheme is unconstitutional because it violates the Due Process Clause of the United States Constitution Article 1, which prohibits the state from depriving them of "life, liberty or property without due process of law. . . ."

55. The right to be free of arbitrary action by legislative bodies is a liberty interest protected by the United States Constitution.

///

///

///

56. Plaintiffs allege that Defendants have acted arbitrarily by:

   a. Requiring a taxicab company to own and operate fifteen (15) taxicabs in order to qualify for taxicab Airport permits while the City Ordinances only require a taxicab company to own and operate five (5) taxicabs to be considered a taxicab company for licensing purposes;

   b. Only allocating a minimum of four (4) Airport permits to each taxicab company despite the fifteen (15)-cab requirement;

   c. Failing to provide clear or consistent information to the taxicab companies regarding what "off Airport" trip information was required;

   d. Failing to provide oversight of what information should be reported to the City regarding "off Airport" trips;

   e. Arbitrarily reducing, by fifty percent (50%), the number of reported trips of Net;

   f. Arbitrarily reducing Yellow's reported trip numbers by One Hundred Twenty Thousand (120,000) trips; and

   g. By creating a system where at least sixty-one percent (61%) of the Airport permits are allocated to a single non-minority concessionaire.

57. A judicial declaration at this time is appropriate and necessary in that the City's actions are arbitrary and will create irreparable harm to Plaintiffs. Plaintiffs request that Defendants be enjoined from implementing the proposed reallocation, from taking any actions towards reallocation, including but not limited to: collecting data; verification of trips, numbers of taxicabs, or numbers of drivers; distributing new Airport taxicab service permits, or otherwise disturbing the status quo.

58. Defendants will continue to proceed in a manner that will force Plaintiffs to suffer great and irreparable harm. Plaintiffs cannot be fully compensated for these harms and thus they are entitled to preliminary and permanent injunctions.

///

///

## SECOND CAUSE OF ACTION

### (Declaratory Relief)

### (Denial of Due Process- California Constitution)

59. Plaintiffs incorporate the allegations of paragraphs 1 through 58 as though fully set forth herein.

60. Plaintiffs seek a declaration that the City Airport Taxicab Permit Reallocation scheme is unconstitutional because it violates the Due Process Clause of the California Constitution Article 1, § 7(a), which prohibits the state from depriving them of "life, liberty or property without due process of law. . . ."

61. The right to be free of arbitrary action by legislative bodies is a liberty interest protected by the California Constitution Art. I, § 7(a).

62. Plaintiffs allege that Defendants have acted arbitrarily by:

    a. Requiring a taxicab company to own and operate fifteen (15) taxicabs in order to qualify for taxicab Airport permits while the City Ordinances only require a taxicab company to own and operate five (5) taxicabs to be considered a taxicab company for licensing purposes;

    b. Only allocating a minimum of four (4) Airport permits to each taxicab company despite the fifteen (15)-cab requirement;

    c. Failing to providing clear or consistent information to the taxicab companies regarding what "off Airport" trip information was received;

    d. No oversight of what information was being reported to the City regarding "off airport" trips;

    e. Arbitrarily reducing, by fifty percent (50%), the number of reported trips of Net;

    f. Arbitrarily reducing Yellow's reported trip numbers by One Hundred Twenty (120,000) trips; and

    g. By creating a system where at least sixty-one percent (61%) of the Airport permits are allocated to a single non-minority concessionaire.

63. A judicial declaration at this time is appropriate and necessary in that the City's actions are arbitrary and will create irreparable harm to Plaintiffs. Plaintiffs request that Defendants be enjoined from implementing the proposed reallocation, from taking any actions towards reallocation, including but not limited to: collecting data; verification of trips, numbers of taxicabs, or numbers of drivers; distributing new Airport taxicab service permits, or otherwise disturbing the status quo.

64. Defendants will continue to proceed in a manner that will force Plaintiffs to suffer great and irreparable harm. Plaintiffs cannot be fully compensated for these harms and thus they are entitled to preliminary and permanent injunctions.

### THIRD CAUSE OF ACTION

(Declaratory Relief)

(Equal Protection -United States Constitution)

65. Plaintiffs incorporate the allegations of paragraphs 1 through 64 as though fully set forth herein.

66. Plaintiffs seek a declaration that the City Airport Taxicab Permit Reallocation scheme violates the United States Constitution that prohibits the City from depriving them of the Equal Protection of the Law.

67. The ordinance denies the Plaintiffs Equal Protection of the Law because it discriminates against Plaintiffs on the basis of race.

68. Plaintiff Cab Companies are all owned by minority persons. Plaintiffs are similarly situated to other taxicab companies that are owned and operated by non-minority. Specifically, the only difference between Plaintiffs and Yellow/Checker is that Plaintiff Cab Companies are owned by racial minorities.

69. Under the Airport Taxicab Permit Reallocation scheme, minority-owned and operated taxicab companies will loose over fifty percent (50%) of their taxicab permits. Each minority-owned Cab Company, except National, will receive only four (4) taxicab Airport permits for a total of 24. However, the majority-owned taxicab company will receive sixty-four (64) taxicab Airport permits.

70. On or about November 20, 2007, during a City Council meeting a Council Member stated that he was not interested in "corporate welfare." Plaintiffs believe that this is an intentionally discriminatory statement made in such a manner to indicate that minority companies should not receive a greater allocation of taxicab Airport service permits and that they were only receiving permits as a subsidy.

71. A judicial declaration at this time is appropriate and necessary in that the City's actions are arbitrary and will create irreparable harm to Plaintiffs. Plaintiffs request that Defendants be enjoined from implementing the proposed reallocation, from taking any actions towards reallocation including but not limited to: collecting data; verification of trips, numbers of taxicabs, or numbers of drivers; distributing new Airport taxicab service permits, or otherwise disturbing the status quo.

72. Defendant will continue to proceed in a manner that will force Plaintiffs to suffer great and irreparable harm. Plaintiffs cannot be fully compensated for these harms and thus they are entitled to preliminary and permanent injunctions.

### FOURTH CAUSE OF ACTION
**(Declaratory Relief)**

**(Equal Protection - California Constitution)**

73. Plaintiffs incorporate the allegations of paragraphs 1 through 72 as though fully set forth herein.

74. Plaintiffs seek a declaration that San Jose City permit allocation scheme violates the United States Constitution that prohibits the City from depriving them of the Equal Protection of the Law.

75. The ordinance denies the Plaintiffs Equal Protection of the Law because it discriminates against Plaintiffs on the basis of race.

76. Plaintiff Cab Companies are all owned by minority persons. Plaintiffs are similarly situated to other taxicab companies that are owned and operated by whites. Specifically, the only difference between Plaintiffs and Yellow/Checker is that Plaintiff taxicab companies are owned by racial minorities.

{6823/002/00217703.DOC}    15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; AND DEMAND FOR JURY TRIAL

77. Under the Airport Taxicab Permit Reallocation scheme, minority-owned and operated taxicab companies will loose over fifty percent (50%) of their taxicab permits. Each minority-owned taxicab company receives only four (4) taxicab Airport permits. However, the majority-owned taxicab company will receive sixty four (64) taxicab Airport permits.

78. On or about November 20, 2007, during a City Council meeting a Council Member stated that he was not interested in "corporate welfare." Plaintiffs believe that this is an intentionally discriminatory statement made in such a manner to indicate that minority companies should not receive a greater allocation of taxicab Airport service permits and were only receiving permits as a subsidy.

79. A judicial declaration at this time is appropriate and necessary in that the City's actions are arbitrary and will create irreparable harm to Plaintiffs. Plaintiffs request that Defendants be enjoined from implementing the proposed reallocation, from taking any actions towards reallocation including but not limited to: collecting data; verification of trips, numbers of taxicabs, or numbers of drivers; distributing new Airport taxicab service permits, or otherwise disturbing the status quo.

80. Defendant will continue to proceed in a manner that will force Plaintiffs to suffer great and irreparable harm. Plaintiffs cannot be fully compensated for these harms and thus they are entitled to preliminary and permanent injunctions.

### FIFTH CAUSE OF ACTION

**(Declaratory Relief)**

**(Deprivation of Civil Rights- 42 U.S.C. § 1982)**

81. Plaintiffs hereby incorporate the allegations of paragraph 1 through 80 as though fully set forth herein.

82. At all times mentioned herein, Plaintiff Cab Companies were and are business operating under the laws of the United States and are accorded certain rights, privileges and immunities secured by the United States Constitution and the laws of the United States.

83. The Defendants, acting under color of State law, have deprived Plaintiffs of its rights, privileges and immunities secured by the Constitution and laws of the United States as hereinabove alleged.

84. As a direct and proximate result of the foregoing, Plaintiffs have suffered and will suffer damages in an amount in excess of the jurisdictional minimum of this Court and according to proof at trial. In addition, Plaintiffs are entitled to recover its attorneys' fees under 42 U.S.C. Section 1988.

## SIXTH CAUSE OF ACTION

### (Declaratory Relief)

85. Plaintiffs hereby incorporate the allegations of paragraphs 1 through 87 as though fully set forth herein.

86. An actual controversy has arisen and now exists between Plaintiffs on the one hand, and Defendants, on the other, relative to their rights and duties in regards to the permit reallocation as set forth and described herein. Plaintiffs contend that, in view of all attendant facts and circumstances, Defendants unlawfully adopted the Airport service reallocation. Plaintiffs assert that the Defendants cannot adopt the permit reallocation because, *inter alia*, the permit reallocation does not treat similarly situated taxicab companies alike on the basis of a suspect classification. Plaintiffs further assert that the permit reallocation is arbitrary.

87. Plaintiffs desire an immediate declaration of rights declaring the Airport service permit reallocation null and void on the grounds that the reallocation (a) violates the Equal Protection Clause of the United States and California Constitutions, and (b) violates the Due Process Clause of the United States and California Constitutions.

88. Such a declaration is necessary and appropriate at this time for the reason that Plaintiffs are irreparably injured and will continue to suffer irreparable injury until such time as such declaration is made.

///

///

## SEVENTH CLAIM FOR RELIEF

### (Injunctive Relief)

89. Plaintiffs incorporate the allegations of paragraphs 1 through 88 as though fully set forth herein.

90. Plaintiffs have no adequate or speedy remedy at law to prevent such continued violations of its constitutional rights as hereinabove alleged, and unless the Defendants and their officers, members, agents, servants, employees, representatives and all other persons acting under, in concert with, or for it, are restrained and enjoined during the pendency of this action and forever from infringing upon such constitutional rights, Plaintiffs will be deprived of their civil rights as more specifically alleged hereinabove.

91. Plaintiffs therefore request a temporary restraining order, preliminary injunction, and permanent injunction restraining Defendants and their officers, members, agents, servants, employees, representatives, and all other persons acting under, in concert with or for it, from enforcing the Airport Taxicab Permit Reallocation plan and from infringing upon Plaintiffs' constitutionally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cab Companies respectfully request judgment in its favor against City and Council as follows:

1. For a temporary restraining order, preliminary injunction, and permanent injunction restraining Defendants and their officers, members, agents, servants, employees, representatives, and all other persons acting under, in concert with, or for it, from enforcing the November 20, 2007, amendments to the City Airport Taxicab Permit Reallocation Plan, and from infringing on Plaintiff Cab Companies' constitutional rights hereinabove alleged;

2. An Order declaring and adjudging that the November 20, 2007, amendments to the Airport Taxicab Permit Reallocation Plan are unlawful and unconstitutional;

///

///

3. For an award of reasonable attorneys' fees;

4. For costs of suit incurred herein; and

5. For such and further relief as the Court deems just and proper.

Respectfully submitted,

SAGASER, JONES & HELSLEY

DATED: December 5, 2007          By _____
                                  Howard A. Sagaser,
                                  Patrick D. Toole, Attorneys for Plaintiffs
                                  U.S.A. Express Cab, LLC, Alpha
                                  Transportation, Inc. dba Alpha Cab
                                  Company, Dial Dialing, Inc. dba California
                                  Cab, City Cab Company, Milpitas Cab, LLC,
                                  National Cab, LLC, and Net Cab Company

## JURY TRIAL DEMANDED

Plaintiffs, U.S.A. Express Cab, LLC, Alpha Transportation, Inc. dba Alpha Cab Company, Dial Dialing, Inc. dba California Cab, City Cab Company, Milpitas Cab, LLC, National Cab, LLC, and Net Cab Company, demand a trial by jury on all issues triable thereby.

Respectfully submitted,

SAGASER, JONES & HELSLEY

DATED: December 5, 2007          By _____
                                  Howard A. Sagaser,
                                  Patrick D. Toole, Attorneys for Plaintiffs
                                  U.S.A. Express Cab, LLC, Alpha
                                  Transportation, Inc. dba Alpha Cab
                                  Company, Dial Dialing, Inc. dba California
                                  Cab, City Cab Company, Milpitas Cab, LLC,
                                  National Cab, LLC, and Net Cab Company