1    RICHARD DOYLE, City Attorney (#88625)
2    GEORGE RIOS, Assistant City Attorney (#77908)
    DAISY M. NISHIGAYA, Deputy City Attorney (#186614)
3    RICHARD D. NORTH, Deputy City Attorney (#225617)
    Office of the City Attorney
4    200 East Santa Clara Street
    San José, California  95113-1905
5    Telephone Number: (408) 535-1900
    Facsimile Number:  (408) 998-3131
6    E-Mail Address:  cao.main@sanjoseca.gov

7    Attorneys for CITY OF SAN JOSE

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                 SAN JOSE DIVISION

12    U.S.A. EXPRESS CAB, LLC, a California      Case Number:  C07-06171 HRL
    organization; ALPHA
13    TRANSPORTATION, INC. dba ALPHA        **DECLARATION OF ROBERT**
    CAB COMPANY, a California               **LOCKHART IN SUPPORT OF**
14    organization; DIAL DIALING, INC., dba      **DEFENDANT'S OPPOSITION TO**
15    CALIFORNIA CAB, a California            **PLAINTIFFS' APPLICATION FOR**
    organization; CITY CAB COMPANY, a       **TEMPORARY RESTRAINING ORDER**
16    California organization; MILPITAS CAB,     **AND PRELIMINARY INUNCTION**
    LLC, a California organization; NATIONAL
17    CAB, LLC, a California organization; and
    NET CAB COMPANY, a California         Date:    TBD
18    organization,                         Time:    TBD
19                               Judge:   Hon. Ronald M. Whyte

20                Plaintiff(s),

21           v.

22    CITY OF SAN JOSE; SAN JOSE CITY
23    COUNCIL, and DOES 1-10, inclusive,

24              Defendant(s).

25

26    I, Robert Lockhart, declare:

27       1.     I am an Airport Operations Manager of the Mineta San Jose International

28    Airport ("Airport").  I have been employed by the City of San Jose for 12 years.  I am in

DECLARATION OF ROBERT LOCKHART ISO DEFENDANT'S       C07-06171 HRL
OPPOSITION TO PLAINTIFFS' APPLICATION FOR TRO         454836

1  charge of landside operations at the Airport, which include the Ground Transportation

2  Program, including taxicabs.  Among other things, I am also in charge of curbside

3  enforcement and parking.

4       2.     On May 18, 2004, the City Council of the City of San Jose approved the

5  Taxicab Service Model ("Model").  The Model was developed by an outside consultant;

6  Brooklyn, New York-based Schaller Consulting, on behalf of the City of San Jose during

7  the regular course of its and the City's business, a true and correct copy of which is

8  attached hereto as Exhibit A.  I know that this is an accurate copy because it was attached

9  to a City Council memorandum and was also provided by me in response to a recent

10  public records act request.  I use this document as a reference during my job

11  responsibilities.  I am familiar with the document and its contents.

12       3.     The approval of the Model provided for the allocation of Company Taxicab

13  Airport Access Permits to qualified taxicab companies ("Company Permits") desiring to

14  provide on-demand pickup service at the Mineta San Jose International Airport, California

15  ("Airport").  The Model was implemented in September 2005 and remains in use at the

16  present time.  This information is also stated in a Supplemental Memorandum to the

17  Mayor and City Council of San Jose, dated October 12, 2007, at pg. 6 ("October 12, 2007

18  Memo"), a true and correct copy of which is attached hereto as Exhibit B.  Although I did

19  not author this document, I know that it was prepared at or about the time of this date by

20  persons with knowledge of its contents.  This document was prepared in the course of

21  regularly conducted City business and is kept in the course of the City's regularly

22  conducted business.  I know that this is an accurate copy because it was provided by me

23  in response to a recent public records act request, and I use it as a reference during my

24  job responsibilities.  I am familiar with the document and its contents.

25       4.     "On-demand" pickup is where taxicabs wait at the Airport to serve arriving

26  passengers.  On-demand is distinguished from reservation service, where customers have

27  pre-arranged with a company to be picked up from or dropped off at the Airport.  Airport

28

DECLARATION OF ROBERT LOCKHART ISO DEFENDANT'S
OPPOSITION TO PLAINTIFFS' APPLICATION FOR TRO

C07-06171 HRL
454836

1  access permits are not required for taxicab companies to provide reservation service at

2  the Airport.

3      5.      Prior to implementation of the Model, only two taxicab companies were

4  authorized to serve Airport on-demand taxicab trips. This information is also stated in a

5  Supplemental Memorandum to Transportation and Environment Committee, dated

6  September 21, 2007, at pg. 2 ("September 21, 2007 Memo"), a true and correct copy of

7  which is attached hereto as Exhibit C. I participated in the authorship of this document. I

8  know that it was prepared at or about the time of this date by persons with knowledge of

9  its contents. This document was prepared in the course of regularly conducted City

10  business and is kept in the course of the City's regularly conducted business. I know that

11  this is an accurate copy because it was provided by me in response to a recent public

12  records act request, and I use it as a reference during my job responsibilities. I am

13  familiar with the document and its contents.

14      6.      The Model provided for a total of 300 permits to be allocated, with 105

15  Company Permits available for qualified taxicab companies and 195 permits available for

16  individual drivers ("Driver Permits") who may affiliate with any taxicab company that retains

17  an On-demand Ground Transportation Concession Agreement with the City of San Jose.

18  This information is also stated in a Memorandum to the Airport Commission, dated

19  September 25, 2007, at pg. 1 ("September 25, 2007 Memo"), a true and correct copy of

20  which is attached hereto as Exhibit D. I authored this document and know it to be an

21  accurate copy. I know that it was prepared at or about the time of this date. This

22  document was prepared in the course of regularly conducted City business and is kept in

23  the course of the City's regularly conducted business. I know that this is an accurate copy

24  because it was provided by me in response to a recent public records act request, and I

25  use it as a reference during my job responsibilities. I am familiar with the document and

26  its contents.

27

28

3

1   7.    When the Model was implemented in September 2005, the 105 Company
2   Permits were distributed among fourteen taxicab companies with a minimum of seven
3   Company Permits each.  See also September 21, 2007 Memo, Exhibit C at pg. 3.

4   8.    The Model further provided for an initial two-year operating period, at the end
5   of which an evaluation and update would take place.  See also September 21, 2007
6   Memo, Exhibit C at pg. 1.

7   9.    The two-year period was intended to allow companies to build and develop
8   their off-Airport business and to match fleet and driver requirements to better serve the
9   entire City.  See also September 25, 2007 Memo, Exhibit D at pg. 1.

10   10.   In order to qualify for access to the 105 Company Permits at the end of the
11   two-year period, taxicab companies would have to demonstrate that they had met a
12   number of requirements, including conducting a minimum of 25% of their Airport trips with
13   alternative fuel vehicles to reduce environmental impact and operating a minimum fleet of
14   15 vehicles and 15 drivers to ensure a fleet size and driver workforce that can meet the
15   municipal code requirement to provide dispatch services 24/7, and to be able to
16   adequately meet Airport service requirements and the needs of a large, geographically
17   dispersed City.  See also September 21, 2007 Memo, Exhibit C at pg. 5.

18   11.   Companies that met these requirements would then qualify for a reallocation
19   of [Company] Permits to be based on each company's share of the off-Airport trips as
20   reported by the companies over the prior year ("Reallocation").  See also September 25,
21   2007 Memo, Exhibit D at pg. 1; and October 12, 2007 Memo, Exhibit B at pg. 6 (referring
22   to "the Methodology for Adjusting Airport Taxicab Permits approved by City Council on
23   November 16, 2004" ("Methodology").

24   12.   "Off-Airport" trips were those trips originating in Santa Clara County from
25   locations other than the Airport.  This information is also contained in the On-demand
26   Ground Transportation Concession Agreement with the City of San Jose ("Final Company
27   Contract"), dated January 4, 2006, at pg. 9, sec. 7(b), a true and correct copy of which is
28   attached hereto as Exhibit E.  I know that it was prepared at or about the time of this date

4

1    by persons with knowledge of its contents.  This document was prepared in the course of

2    regularly conducted City business and is kept in the course of the City's regularly

3    conducted business.  I know that this is an accurate copy because it was provided by me

4    in response to a recent public records act request, and I use it as a reference during my

5    job responsibilities.  I am familiar with the document and its contents.

6         13.    The City placed great importance on the number of off-Airport trips in order

7    to create an incentive for taxicab companies to better serve Downtown and

8    neighborhoods, which were shown to have service levels short of customer expectations.

9    See also September 21, 2007 Memo, Exhibit C at pg. 5.

10        14.    Plans for the Reallocation of Company Permits based on the number of

11   reported off-Airport trips were presented on September 28, 2007.  See also October 12,

12   2007 Memo, Exhibit B at pg. 6.  At that time, many small taxicab companies voiced their

13   objection to the Methodology stating that it favored larger established taxicab companies.

14   See also id.  However, as noted by the largest taxicab company in the City, the process

15   being implemented followed the previously approved method that all companies were

16   made aware of throughout the two-year process.  See also id.  The Methodology and

17   details for reporting off-Airport trips had been described to taxicab companies at the

18   September 23, 2005 Taxicab Advisory Team ("TAT") meeting, which I attended, and I am

19   informed and believe that it was also described at meetings held with companies on

20   September 28 and 30, 2005.  See also id. at pg. 5.  This information is also contained in a

21   Supplemental Memorandum to the Mayor and City Council of San Jose, dated November

22   16, 2007, at pg. 3 ("November 16, 2007 Memo"), a true and correct copy of which is

23   attached hereto as Exhibit F.  I participated in the authorship of this document.  I know that

24   it was prepared at or about the time of this date by persons with knowledge of its contents.

25   This document was prepared in the course of regularly conducted City business and is

26   kept in the course of the City's regularly conducted business.  I know that this is an

27   accurate copy because it was provided by me in response to a recent public records act

28

DECLARATION OF ROBERT LOCKHART ISO DEFENDANT'S              C07-06171 HRL
OPPOSITION TO PLAINTIFFS' APPLICATION FOR TRO               454836

1  request, and I use it as a reference during my job responsibilities.  I am familiar with the
2  document and its contents.

3       15.    I am informed and believe that handouts at the September 28th and 30th,
4  2005 meetings included a sample excel spreadsheet indicating the data fields that needed
5  to be filled out for all permitted drivers (Airport and non-Airport permittees) including,
6  dispatch and flag drop trips, and origination and destination codes (a sample sheet of
7  codes was handed out).  See also November 16, 2007 Memo, Exhibit F at pg. 3.

8       16.    I am informed and believe that an October 4, 2005 letter was mailed to the
9  taxicab company owners with specific instructions for off-Airport trip reporting.
10  Specifically, Permit-holding drivers were instructed to record: (1) the name of the
11  company; (2) the date of the trip; (3) the Permit number; (4) whether there was airport
12  access on the trip; (5) whether it was a dispatch or flag drop; (6) the time of the trip; (7) the
13  place (by code) of origination; and (8) the place (by code) of destination.  See October 4,
14  2005 Letter attached to McAnally Declaration, Exhibit A.

15       17.    The off-Airport trip requirements did not change between September 2005
16  and the Reallocation.  This information is also stated in a Memorandum to the Building
17  Better Transportation Committee, dated March 29, 2004, at pg. 7 ("March 29, 2004
18  Memo"), a true and correct copy of which is attached hereto as Exhibit I.  I participated in
19  the authorship of this document.  I know that it was prepared at or about the time of this
20  date by persons with knowledge of its contents.  This document was prepared in the
21  course of regularly conducted City business and is kept in the course of the City's regularly
22  conducted business.  I know that this is an accurate copy because it was provided by me
23  in response to a recent public records act request, and I use it as a reference during my
24  job responsibilities.  I am familiar with the document and its contents.

25       18.    There were significant reservations about changing the Methodology after
26  the fact, as desired by some of the smaller companies.  Specifically: (1) the method was
27  previously established and well communicated; (2) the smaller companies had a two year
28  period to develop business, but many appear to have not focused on developing and

6

1    marketing their business in a way needed to gain market share in the City; and (3) if the

2    method is changed or a delay in implementing the Reallocation is approved, no incentive

3    or requirement would exist for smaller companies to take the necessary steps to build their

4    dispatch and neighborhood business. See also October 12, 2007 Memo, Exhibit B at pg.

5    6.

6        19.    The plans for Reallocation of the Company Permits were approved by the

7    City Council in open session on November 20, 2007. I was present at this session of the

8    City Council. This information is also contained in the City Council Agenda Synopsis

9    (November 20, 2007) at pg. 19, section 6.3, a true and correct copy of which is attached

10   hereto as Exhibit G. I know that this is an accurate copy because I was present at the City

11   Council session. I know that it was prepared at or about the time of this date by persons

12   with knowledge of its contents. This document was prepared in the course of regularly

13   conducted City business and is kept in the course of the City's regularly conducted

14   business. I use it as a reference during my job responsibilities. I am familiar with the

15   document and its contents.

16       20.    I also authored an Email and Letter to the Taxicab Company Owners

17   containing this information, dated December 12, 2007, at pg. 2 ("December 12, 2007

18   Letter"), a true and correct copy of which is attached hereto as, Exhibit H. I know that it

19   was prepared at or about the time of this date. This document was prepared in the course

20   of regularly conducted City business and is kept in the course of the City's regularly

21   conducted business. I know that this is an accurate copy because it was provided by me

22   in response to a recent public records act request, and I use it as a reference during my

23   job responsibilities. I am familiar with the document and its contents.

24       21.    The City Council further decided that, of all of the off-Airport trips reported by

25   companies, only trips originating in San Jose ("SJ") would be counted as off-Airport trips

26   for purposes of the Reallocation. See also the December 12, 2007 Letter, Exhibit H. This

27   determination had the effect of reducing the combined total of off-Airport trips for all

28

DECLARATION OF ROBERT LOCKHART ISO DEFENDANT'S                    C07-06171 HRL
OPPOSITION TO PLAINTIFFS' APPLICATION FOR TRO                     454836

reporting companies and specifically reduced the volume of trips reported by SV Checker and Yellow Cab by a total of approximately 114,000.

22.     I am informed and believe that upon staff's review of Net Cab's submitted off-Airport trip record and subsequent discussion with the company owner, it was determined that at least 50% of Net Cab's entries could not be verified and the total number of trips used for purposes of the Reallocation was reduced accordingly.  See also Sept. 21, 2007 Memo, Exhibit C at pg. 5; and McAnally Decl.

23.     Like Net Cab, Golden Star had serious problems with the verifiability of many entries in their off-Airport trip reporting, including too many trips by a driver in very short time periods and several trips from different places at the same time.  For both of these companies, the verifiable data was estimated at about 50% of the total and a reduction was made accordingly as an alternative to voiding all of the data and disqualifying the companies from receiving Company Permits.  Net Cab and Golden Star were the only two reporting companies who could not verify a substantial portion of their data.

24.     On December 12, 2007, the taxicab companies were provided with the final Company Permit Reallocation, which provided for a minimum of four Company Permits to qualified companies.  See also the December 12, 2007 Letter, Exhibit H at pg. 2. Company Permits were awarded as follows (asterisk indicates plaintiff companies):

| Company | # of SJ Trips | % of SJ Trips | Permits Allocated |
| --- | --- | --- | --- |
| California * | 19,167 | .037% | 4 |
| City * | 7,998 | .015% | 4 |
| Executive | 11,209 | .021% | 4 |
| Golden Star | 36,938 | .071% | 9 |
| Milpitas * | 7,894 | .015% | 4 |
| Rainbow | 58,269 | .111% | 12 |
| SV Checker | 74,014 | .141% | 14 |
| United | 32,154 | .061% | 9 |

DECLARATION OF ROBERT LOCKHART ISO DEFENDANT'S
OPPOSITION TO PLAINTIFFS' APPLICATION FOR TRO

C07-06171 HRL
454836

| Company | # of SJ Trips | % of SJ Trips | Permits Allocated |
|---|---|---|---|
| USA Express * | 14,992 | .028% | 4 |
| Yellow | 261,023 | .499% | 41 |

See also *id.* at pg. 3.

25.     Six of the ten taxicab companies slated to receive Company Permits under the Reallocation are not parties to this action.  These six companies have taken actions over the past two years in the interest of receiving Company Permits under the Reallocation and any delay of or revisions to the Reallocation may negatively affect this interest.

26.     Yellow and SV Checker are owned by a non-minority.  Non-plaintiff Golden Star, which is slated to receive nine Company Permits (up from zero prior to the Reallocation), is a cooperative owned by I am informed and believe, primarily Indian and African decent drivers.  United is owned by a woman.  Executive and Rainbow are owned by a Russian immigrant.

27.     Plaintiffs Alpha, National and Net Cab were not awarded Company Permits for failure to meet the minimum requirements for eligibility.  Neither Alpha, National nor Net Cab met the minimum requirement of fifteen vehicles and National also did not meet the minimum requirement for trips by alternative fueled vehicles.

28.     The scheduled effective date for the Reallocation is January 1, 2008.  See also December 12, 2007 Letter, Exhibit H at pg. 1.

29.     I have read the Memorandum of Points and Authorities in Support of Ex Parte and Preliminary Injunction dated December 18, 2007 ("MPA").  In this memorandum, Plaintiffs cite a "delay" in the effective date of the Reallocation "from September 2007 to January 2008."  See MPA at 1:18-20.  The "delay" to January 1, 2008 was to allow time to address the issues brought forward by the industry, including the Plaintiffs, at the October 1, 2007 Transportation and Environment Committee and Airport Commission meetings and in subsequent communications prior to the November 20, 2007 City Council meeting when the Council set the effective date to January 1, 2008.

DECLARATION OF ROBERT LOCKHART ISO DEFENDANT'S
OPPOSITION TO PLAINTIFFS' APPLICATION FOR TRO

C07-06171 HRL
454836

1       30.   National Cab's reported data was not considered because the company had

2 not met the minimum number of vehicle or alternative fuel trip requirements.

3       31.   Plaintiffs U.S.A. Express Cab, California Cab, City Cab and Milpitas Cab

4 reported only 2.8%, 3.7%, 1.5% and 1.5%, respectively, of the total number of reported

5 off-Airport trips but still received four Company Permits each.   See also December 12,

6 2007 Letter, Exhibit H at pg. 2.  Yellow and SV Checker, although they respectively

7 accounted for 49.9% and 14.1% of the total off-Airport trips, received only 41 and 14

8 Company Permits, respectively representing only 39% and 13.3% of the total allocation.

9 See also id.  The allocations for Yellow and Checker were smaller than their actual

10 percentage of reported off-Airport trips in order to provide at least four Company Permits

11 to all qualifying companies, even if they attained less than 4% of the total off-Airport trip

12 volume.

13       32.   The Methodology and resultant Reallocation did not use racial

14 classifications, used objectively verifiable data and served to fulfill the legitimate

15 government interest of ensuring quality taxicab service to both the Airport and the City of

16 San Jose.  See also September 21, 2007 Memo, Exhibit C at pg. 5.

17       33.   The minimum vehicle requirement is based on the premise that fifteen

18 taxicabs are needed in order for companies to provide quality customer service at the

19 Airport and ensure dispatching services 24 hours a day and 365 days a year to the City.

20 See also September 21, 2007 Memo, Exhibit C at pg. 5.  Although the City may only

21 require five vehicles and drivers to qualify as a taxicab company for licensing purposes,

22 the provision of Airport services is not a requirement for licensing and the scope of

23 services non-Airport permitted taxicab companies are expected to provide is not as great.

24 As stated in the Model:

25         The minimum fleet of 15 cabs is recommended because the

26         City's current minimum of five taxicabs is not sufficient for companies to provide a satisfactory level of dispatch service in

27         San Jose. ... The requirement should be phased in during the first two years to allow companies time to increase the size of

28         their operations and should be applied only to companies serving the airport.

10

1    See also Model, Exhibit A at pg. 38.

2        34.    The minimum award of four Company Permits (out of 105) per qualifying

3    company served to benefit qualifying companies even if they reported less than 4% of the

4    total off-Airport trips.

5        35.    The decision to disregard the data of Net Cab's reported off-airport trips had

6    no impact on Net Cab's failure to receive Company Permits, which resulted from the

7    company's failure to meet the minimum number of vehicles requirement.

8        36.    The total number of Yellow Cab's reported off-Airport trips were reduced for

9    purposes of the Reallocation because of the City Council's November 20, 2007 decision to

10   only include those off-Airport trips that originated in the City of San Jose rather than all of

11   Santa Clara County.  All of the qualifying companies were subject to this reduction.  And

12   because all companies were required to report origination and destination codes for each

13   and every off-Airport trip, this correction was easily applied to the reporting companies

14   without need to solicit further data.

15       37.    Between 2005 and 2007, Golden Star successfully grew its business and

16   earned nine Company Permits in the Reallocation, more than double the number of

17   Company Permits awarded to any one of the Plaintiff companies.  See also December 12,

18   2007 Letter, Exhibit H at pg. 3.

19       38.    All of the Plaintiffs were in business prior to the implementation of the Model

20   in 2005, when all on-demand services at the Airport were handled by only two companies

21   and none of the Plaintiffs had any such access.  Plaintiffs were still able to access the

22   Airport at that time because Company Permits only regulate on-demand pickups; any

23   taxicab company can pick up or drop off at the Airport on a reservation basis.  Also, in the

24   fiscal year July 2006 through June 2007, there were 387,362 Airport on-demand taxicab

25   trips and 523,588 non-Airport San Jose-originating trips made by those companies that

26   qualified for Company Permits in the Reallocation.  Thus, the Airport on-demand trips

27   accounted for only 42.5% of the total City business.

28

DECLARATION OF ROBERT LOCKHART ISO DEFENDANT'S
OPPOSITION TO PLAINTIFFS' APPLICATION FOR TRO

C07-06171 HRL
454836

1       39.    Golden Star, for example, had no Company Permits prior to the Reallocation

2   but gained 83 affiliated Driver Permits and was able to successfully grow their business

3   between 2005 and 2007, earning nine Company Permits in the Reallocation.

4       40.    The next Reallocation of Company Permits will be based on trips generated

5   between April 1, 2008 and December 31, 2008.  All companies, including Plaintiffs, will

6   have the ability to demonstrate that they have met the requirements to qualify and receive

7   Company Permits commensurate with the volume of their off-Airport trips.

8       I declare under penalty of perjury under the laws of the State of California that the

9   foregoing is true and correct except for those matters that I state on information and belief,

10  which I believe to be true.  Executed on December 28, 2007 at San Jose, California.

ROBERT LOCKHART

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28