**EXHIBIT B
DECLARATION OF ROBERT LOCKHART**

COUNCIL AGENDA: 10-16-07
ITEM:



**CITY OF SAN JOSE**
CAPITAL OF SILICON VALLEY

# Memorandum

**TO:** HONORABLE MAYOR AND CITY COUNCIL

**FROM:** James R. Helmer
William F. Sherry, AAE
Robert L. Davis

**SUBJECT:** TAXICAB SERVICE MODEL SUPPLEMENTAL MEMORANDUM

**DATE:** 10-12-07

Approved                                                                 Date

## REASON FOR SUPPLEMENTAL

To provide the City Council with supplemental information regarding the Transportation and Environment Committee recommendation related to development of a Taxicab Commission and updated information regarding the reallocation of Airport Taxicab Company Permits.

## BACKGROUND

On September 7, 2005, the new Taxicab Service Model was initiated and Taxi San José (TSJ) began providing Dispatch Services at Mineta San José International Airport (Airport) to all 14 San José taxicab companies and the individual drivers with Airport permits. Various other service model elements, including customer service training for drivers, were also initiated. In September 2007, the Taxicab Service Model passed its initial two-year operating period.

On October 1, 2007, staff presented a Taxicab Service Model Status Report to the Transportation and Environment (T&E) Committee. The report addressed the established goals and performance of Taxicab Service Model after two years of operation, and presented recommendations and updates on various policy matters. The T&E Committee accepted the staff report on the Taxicab Service Model, but took no action on the evaluation of leaseability, transferability and caps. The Committee, through a memorandum from Councilmember Williams and Vice Mayor Cortese, recommended that a Taxicab Commission be the preferred governance and regulation model for the taxicab industry and directed staff to report to the City Council on the development of a Taxicab Commission. On the matter of Taxicab Company Airport Permit reallocation, the Committee discussed the matter, received feedback from the taxicab industry, but took no action on the matter beyond requesting an update on the Airport Commission advisory action from their meeting that same night. This supplemental memorandum responds to T&E Committee's direction and provides information and options for further action.

## ANALYSIS

### Taxicab Regulation and Governance Models

The Taxicab Advisory Team (TAT) was established by the City Council on January 30, 2001. The TAT was created to serve as the oversight, dispute resolution and advisory body to address taxicab industry issues. The group was balanced in its representation of affected stakeholders in order to ensure that all perspectives were being considered. Over time the TAT evolved into a less formal body, meetings were held more frequently on a monthly rather than quarterly basis, and each of the stakeholder groups continued to be represented. Discussion and decision making became more consensus oriented rather than driven by Roberts Rules of Order and majority rule. Most of the recommendations implemented as part of the new Taxicab Service Model were processed through the TAT in this manner. This less formal format best served the TAT when acting on the less contentious issues.

However, when the TAT is faced with issues where stakeholder interests are not aligned, or where staff's position on matters differs from stakeholders, the TAT process has a tendency to break down. Earlier this year driver representatives chose to refrain from participating in TAT. Most recently, small taxicab companies communicated their desire to change the previously approved reallocation method for Airport taxicab company permits. The lack of alignment on important industry policy and regulatory matters, and the lack of authority that exists in the TAT has called the current structure into question. It has placed the T&E Committee and City Council in the recurring position of being the final arbiter regarding detailed matters related to the policy matters of the Taxicab Service Model, and disagreements among various factions of the taxicab industry.

The September 21, 2007 staff report to the T&E Committee put forth three options for re-establishing governance over the taxicab industry. The three options ranged from re-constituting the TAT, to developing an independent taxicab commission, to exploring regulation of the taxicab industry on a countywide basis through the Valley Transportation Authority. The T&E Committee recommended that an Independent Taxicab Commission be the preferred governance and regulation model for the taxicab industry in San Jose.

### Independent Taxicab Commission

In an effort to inform the City Council discussion related to considering an Independent Taxicab Commission, staff is providing information in four areas that are rekevant to the discussion.

1. Authority of a Taxicab Commission
2. Structure of a Taxicab Commission
3. Staffing Requirements of a Taxicab Commission
4. Funding Requirements to Staff and Support a Taxicab Commission.

HONORABLE MAYOR AND CITY COUNCIL
10-12-07
Subject: Taxicab Service Model Supplemental Memorandum
Page 3

1. <u>Authority of a Taxicab Commission</u>

The authority that might be granted to a Taxicab Commission is likely the most important consideration that will impact all the other areas related to developing a Commission. The authority is best described as part of a continuum ranging from purely advisory to the City Council or other entities, to a hybrid model that combines some advisory authority with actual regulatory authority, to a fully independent model that grants full regulatory authority. The fully independent model would only be subject to City Council appointment of members, appropriations, and future changes to the grant of authority. The table below provides a framework to consider various models the City Council might consider and the some of the associated features of the models. The information is by no means comprehensive and is designed to provide some context and initial information to guide the evaluation process. Additional research and information is recommended before any decision is made.

| **Advisory Model** | **Hybrid Model** | **Fully Independent Model** |
|---|---|---|
| • Creates independent advisory body focused on taxicab matters, providing forum where matters are vetted among members with more independence than current TAT.<br><br>• Retains final City Council control over all policy and regulatory matters similar to other City commissions.<br><br>• Likely does not change current dynamic where City Council remains final arbiter on detailed taxicab policy matters.<br><br>• Requires staff support and resources that are not available, while current regulation of the industry does not meet cost recovery. Industry fees would need to increase. | • Creates independent advisory and regulatory body focused on taxicab matters that may act as final authority on certain matters removing need for City Council involvement on all matters.<br><br>• Retains partial City Council control on certain policy and regulatory matters. Specific matters that are advisory versus delegated authority need to be determined based review of various matters.<br><br>• Requires staff support and resources that are not available, while current regulation of the industry does not meet cost recovery. Industry fees would need to increase. | • Creates independent regulatory body focused on taxicab matters that would act as final authority on all matters removing need for City Council involvement beyond appointment, funding and charter change.<br><br>• Creates body that would be able to engage in taxicab policy and regulation more frequently than City Council possibly bringing resolution to matters more timely.<br><br>• Removes City Council as final arbiter on detailed taxicab policy matters.<br><br>• Requires staff support and resources that are not available, while current regulation of the industry does not meet cost recovery. Industry fees would need to increase. |

HONORABLE MAYOR AND CITY COUNCIL
10-12-07
Subject: Taxicab Service Model Supplemental Memorandum
Page 4

2. Structure of a Taxicab Commission

The structure of a Taxicab Commission focuses on matters such as the number of members, the interests represented, and the appointment process. Typical City Commissions have seven members that are nominated by the Mayor and appointed by the City Council. If the City Council decided to pursue the development of a Taxicab Commission staff suggests one of two options be considered:

A. Seven member body nominated by the Mayor and appointed by the City Council. Nominations are recommended to come from a broad range of constituencies, but not direct representation from the taxicab industry to ensure a more independent approach to matters. Constituencies to consider for possible representation include the hospitality industry, the downtown, neighborhoods, the airlines, and seniors and/or the disabled community.

B. Seven member body nominated by the Mayor and appointed by the City Council. Five of the members could be at-large voting members, with two ex-officio or non-voting members representing the taxicab companies and drivers to offer direct stakeholder perspective. Nominations for the five voting members are recommended to come from a broad range of constituencies like option one above.

3. Staffing Requirements of a Taxicab Commission

Two advisory bodies exist in the City that have some purview over taxicab matters. The Taxicab Advisory Team, described earlier, is staffed by the Department of Transportation, with the assistance of the Airport and Police Departments. Since no new resources were appropriated for the purpose of staffing the TAT, staff from the three departments added the responsibility of staffing the TAT to the workload of existing staff members. To be as efficient as possible with limited resources, staff conducts monthly meetings in an informal manner. No industry leadership has emerged to help in the guidance of the TAT.

The Airport Commission is the other body that has some level of advisory oversight of the taxicab industry as it relates to Airport taxicab matters. Although the Airport is the focus of many regulatory and industry matters, the Airport represents only approximately $1/3^{rd}$ of the trips served by the San Jose taxicab industry. Many regulatory matters are non Airport related, which are not under the purview of the Airport Commission. The Airport Commission is also engaged in many issues covering a range of Airport activities, of which taxicab matters are a small part.

To adequately staff a Taxicab Commission, whether advisory or fully independent, dedicated staff support is needed. The myriad of Brown Act requirements, policy analysis, research, and the typical workload associated with a Commission would require a base level of staff support. Assuming the Airport, Police and Transportation Departments continue to manage their existing responsibilities, a new Taxicab Commission could likely be staffed with an administrator type position and a staff support position to prepare agendas, minutes, and policy reports. Under this

HONORABLE MAYOR AND CITY COUNCIL
10-12-07
Subject: **Taxicab Service Model Supplemental Memorandum**
Page 5

scenario, it is recommended that the City Manager's Office have the authority to appoint staff to the Commission to ensure consistent, professional support, and to provide the authority through the City Manager's Office to properly coordinate with existing staff in the Police, Airport and Transportation Departments.

4. <u>Funding of a Taxicab Commission</u>

A Taxicab Commission's primary costs would be associated with staff support, and possibly depending upon the level of authority Commission activity related to supplies and materials for meetings and other ancillary activities. As described above, staff support for a Taxicab Commission would likely require two positions to effectively meet the needs associated with the Brown Act, policy analysis, research, and typical workload associated with a Commission.

The anticipated budget needed to adequately staff and support Commission activities is likely in the $200,000 to $250,000 range annually. To fund a budget in this range from taxicab industry fees approximately 50% should be supported by companies and 50% by drivers, which would result in an average fee for a licensed company of $9,000 annually (14 companies, prorated based upon size of company) and $250 per driver annually (approximate 500 permitted drivers).

**Reallocation of Airport Taxicab Company Permits (105 Permits)**

The Taxicab Service Model, approved by City Council in 2004 and implemented in September 2005, had as a primary goal enhancing access to the Airport and improving service to the rest of the City. That goal was accomplished by allowing all 14 companies to operate at the Airport, by providing each company with a minimum of seven Airport permits, and by requiring companies and drivers to serve off the Airport on alternate days. The service model was designed to provide incentives to serve the Downtown, neighborhoods, and other non Airport trips. The rationale for the incentive was quite simple. Obtaining Airport business through the Taxi San Jose line is typically the easiest business to serve. It requires little in the way of company or driver infrastructure, marketing or business development. Drivers wait in line for a relatively stable flow of customers. Building neighborhood business however requires dispatching, marketing, cultivation of customer relationships, and responsive, high quality customer service.

The Taxicab Service Model approved by City Council on May 18, 2004 and the Methodology for Adjusting Airport Taxicab Permits approved by City Council on November 16, 2004 established the method to reallocate Airport taxicab company permits. The method established to reallocate the 105 permits was based upon the number of trips provided to customers Downtown, in neighborhoods, and through outreach or other non Taxi San Jose dispatched trips. The methodology was further described to taxicab companies at the September 23, 2005 TAT meeting, and at meetings held with companies on September 28 and 30, 2005. A letter sent to all companies on October 4th 2005 further detailed off Airport trip requirements. At the January 2007 TAT meeting, staff again presented the methodology to further inform members of the taxicab industry of the planned reallocation.

HONORABLE MAYOR AND CITY COUNCIL
10-12-07
Subject: **Taxicab Service Model Supplemental Memorandum**
Page 6

Taxicab companies were provided a two-year development period from September 2005 through September 2007 to build and develop their off Airport business, install enhanced computer aided dispatch systems, and meet fleet and driver requirements to better serve the entire City. The first year of trip data did not count for purposes of the reallocation to enable companies to refine their data collection systems.

Department of Transportation and Airport staff reviewed off Airport (non Taxi San Jose dispatched) trip figures submitted by the companies on a monthly basis over the past year. After clarification of some data to ensure reasonable accuracy, the reallocations were determined by assigning the 105 permits to companies based on their share of the total off Airport trips (non Taxi San Jose dispatched) reported. In an instance where data could not be adequately verified through reasonable documentation and explanation by the company, trip activity was not counted. Two companies were not in compliance with the provision to operate a minimum fleet of 15 vehicles and 15 drivers and as result received no allocation. This requirement was established to provide ensure dispatch services for a large City like San Jose could be provided 24/7 as the municipal code requires, while adequately meeting Airport service requirements.

Staff presented the results of the reallocation to taxicab companies on September 28, 2007, with an effective date of November 1, 2007. Staff presented an overview of the process and results to the T&E Committee and Airport Commission at their respective October 1, 2007 meetings. Many small taxicab companies voiced their objections to the methodology stating it favored larger established taxicab companies. The largest taxicab company in the City made the point that the process being implemented followed the previously approved method that all companies were made aware of throughout the two year process. Driver representatives suggested that the 105 permits be reallocated to drivers adding to the 195 permits already issued to drivers. The T&E Committee did not take action on this item and was interested in the Airport Commission's advisory action on the matter. The Airport Commission heard similar testimony to the T&E Committee and took the action of recommending deferral for six months until May 1, 2008. The deferral was to provide additional time for small companies to improve data systems and further develop off Airport business.

Staff has followed the established reallocation methodology based upon City Council action in May and November 2004 and does not have the authority to change the method without City Council direction. Staff believes that the method established in 2004 was based upon the right incentives to better serve under served markets. We also understand that smaller less established companies find the method challenging to effectively compete with larger companies. The concerns staff sees with changing the method after the fact are threefold: 1) the method was previously established and well communicated, 2) the smaller companies had a two year period to develop business, but many appear to have not focused on developing and marketing their business in a way needed to gain market share off the Airport, and 3) if the method is changed or a delay is approved, what incentive or requirement would exist for smaller companies to take the necessary steps to build their dispatch and neighborhood business.

HONORABLE MAYOR AND CITY COUNCIL
10-12-07
Subject: Taxicab Service Model Supplemental Memorandum
Page 7

Although the reallocation method was previously established and well communicated, staff prepared a series of options that the City Council may wish to consider in the event the Council is not prepared to proceed with the original reallocation. The options are as follows:

1. Defer the reallocation of Airport taxicab company permits six months until May 1, 2008 consistent with the recommendation of the Airport Commission providing additional time for smaller companies to improve their data collection and further develop off Airport business.

2. Proceed with the reallocation effective November 1, 2007, but establish minimum and maximum allocations of Airport taxicab company permits. The minimum could be between 3 to 5 permits and the maximum could be between 30 and 35. A system with minimum and maximums retains the incentive and rewards for building business off the Airport, while protecting smaller less established companies with a small base of Airport business.

3. Distribute the 105 Airport taxicab company permits to the drivers on the active waiting list for Airport driver permits. Should the number of permits exceed those on the current waiting list, a new waiting list would be established for those drivers not on the current list and the order of the list would be established by a lottery. This option would further enhance the goal of balancing equity within the industry and force companies to further compete for drivers, likely lowering weekly gates fees drivers pay to companies.

**PUBLIC OUTREACH**

Staff has presented to and sought feedback regarding major elements of this report from the Taxicab Advisory Team and the Airport Commission.

**COORDINATION**

This report has been coordinated with the City Attorney's Office.

|  |  |  |
|---|---|---|
| James R. Helmer | William F. Sherry, AAE | Robert L. Davis |
| Director of Transportation | Director of Aviation | Chief of Police |